UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW RANIERO,

                                   Petitioner,

                   -vs-                                    03-CV-0610C(SR)

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                                   Respondent.

_____

        Plaintiff Matthew Raniero initiated this action pursuant to 42 U.S.C. §405(g) to

review the final determination of the Commissioner of Social Security ("Commissioner")

denying his application for Social Security disability ("SSDI") benefits.   Initially, the

Commissioner moved for judgment on the pleadings (Item 6), and the plaintiff cross-moved

for the same relief, pursuant to Fed. R. Civ. P. 12(c).  Item 8.  The Commissioner now

seeks a reversal and remand for further administrative proceedings.  Item 11.  For the

following reasons, the Commissioner's motion is denied, and plaintiff's cross-motion is

granted.

## BACKGROUND

        Plaintiff was born on August 3, 1950 (T. 19).[1]  He applied for SSDI benefits on

January 26, 2000, with an alleged disability onset date of December 1, 1999 (T. 125-27).

Plaintiff alleges disability based on two herniated discs, right shoulder impingement, and

diabetes (T. 102).  His application was denied initially on June 10, 2000 (T. 103-06), and

_____

        [1] References preceded by "T." are to page numbers of the administrative record
filed by defendant as part of the answer to the complaint.

upon reconsideration on July 17, 2000 (T. 109-11).  Plaintiff requested an administrative hearing, which was held on August 15, 20001 and September 26, 2001 before Administrative Law Judge ("ALJ") Eric L. Glazer (T. 36-100).  On November 28, 2001, the ALJ determined that plaintiff was not disabled and not entitled to SSDI benefits (T. 19-25).

The ALJ's decision became the Commissioner's final determination on June 13, 2003, when the Appeals Council declined plaintiff's request for review (T. 7-9).  On August 12, 2003, plaintiff commenced this action seeking judicial review of the Commissioner's final determination. Item 1.  The Commissioner filed an answer on November 10, 2003 (Item 3), and moved for judgment on the pleadings on February 9, 2004.  Item 6.  Plaintiff filed a cross-motion for judgment on the pleadings on March 23, 2004 on the grounds that the decision is not supported by substantial evidence.  Item 8. In her Reply to the plaintiff's motion, the Commissioner requested that the matter be reversed and remanded to the Social Security Administration for further administrative proceedings.  Item 11.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act states that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see*

*also Tejada v. Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999). Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson,* 402 U.S. at 401. The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel,* 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews,* 418 F. Supp. 1139, 1141 (E.D.Wis. 1976), *quoted in Gartmann v. Sec'y of Health and Human Servs.,* 633 F. Supp. 671, 680 (E.D.N.Y. 1986). The Commissioner's determination cannot be upheld when it is based on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada,* 167 F.3d at 773.

## II.    Standards for Determining Eligibility for Disability Benefits

The regulations set forth a five-step process for the ALJ to follow in evaluating disability claims. *See* 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of

an impairment found in 20 C.F.R.  Part 404 , Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past relevant work.   Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity, based on a series of charts provided in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").  *See Curry v. Apfel,* 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari,* 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform.  *See Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since December 1, 1999, the alleged onset date of disability (T. 20).  In reviewing plaintiff's medical records, the ALJ noted that plaintiff has a history of coronary artery disease, degenerative changes of the lumbar spine, and anxiety.  Therefore, he suffers from "severe" impairments for purposes of the regulations.  The ALJ  also found that plaintiff suffers from diabetes, but that this impairment is considered non-severe, as it is stable without any signs of retinopathy or end organ dysfunction.  The ALJ concluded that plaintiff's impairments, individually or in combination, did not meet or equal the

4

requirements of the Listings (T. 20).   Proceeding to the fourth step of the sequential evaluation process, the ALJ found that while plaintiff suffers from discomfort, he retains the residual functional capacity to perform light exertion with certain limitations (T. 20).   With the assistance of a vocational expert, the ALJ found that plaintiff could perform a significant number of jobs in the national economy, including small product assembler, maintenance service dispatcher, and ticket seller (T. 22-23).   Accordingly, the ALJ concluded that plaintiff was not disabled for purposes of the Social Security Act.

The Commissioner concedes that the matter should be remanded for further proceedings, as the ALJ relied in part on the opinion of Mark Nepokroeff, M.D., a consultative physician whose medical license was subsequently revoked.   Plaintiff concedes that the Commissioner properly found no disability for the period December 1, 1999 through August 2, 2000, but contends that the finding of no disability after August 3, 2000 is not supported by substantial evidence.   Plaintiff seeks a reversal and remand for the calculation of benefits.

## III.    The Medical Evidence

Plaintiff has sought treatment for various conditions, including back pain, shoulder pain, chest pain, diabetes, and anxiety.[2]   He was injured in November 1999 in a work-related accident.   On January 15, 2000, Plaintiff was referred to Dr. Eugene Gosy.   Dr. Gosy's examination revealed left elbow trauma with low grade residual sympathetically

---

[2]  Plaintiff does not claim disability with regard to his anxiety or chest pain.  As such, medical records relating to these conditions have not been summarized in this decision, although they are part of the administrative record.  Additionally, the ALJ found, and plaintiff does not dispute, that plaintiff's diabetes is not a severe impairment for purposes of the regulations.  Accordingly, the court has not summarized medical records relating to plaintiff's diabetes.

maintained pain (T. 308).  Plaintiff was treated with physical therapy and pain medication.

Upon reevaluation in June and July 2000, Dr. Gosy found that plaintiff's disability status

was "mild partial," and that plaintiff could function in his position as a heavy equipment

operator for the City of Buffalo  (T. 305, 306).

On March 8, 2000, plaintiff was examined by Mark Nepokroeff.  Dr. Nepokroeff

diagnosed low back pain, herniated discs, lumbar radiculopathy, obesity, and poorly

controlled non-insulin-dependent diabetes (T. 317).  In the opinion of Dr. Nepokroeff,

plaintiff would be able to perform work with no heavy lifting.

In May 2000, Dr. Janis Dale, a State Agency physician, reviewed plaintiff's medical

records.  Dr. Dale opined that plaintiff could occasionally lift/carry up to 20 pounds and

frequently lift/carry up to 10 pounds.  Plaintiff was able to sit, stand and/or walk  for about

six hours in an eight-hour workday, with unlimited ability to push/pull (T. 342).  Dr. Verna

Yu, another State Agency physician, affirmed Dr. Dale's assessment (T. 348).

Plaintiff was examined by Dr. James Czyrny, a specialist in rehabilitation medicine,

on May 25, 2000.  Dr. Czyrny opined that plaintiff showed evidence of a right shoulder

impingement and mild limitation and pain  in the range of motion in the lower back (T. 199).

On March 1, 2001, Dr. Nicholas Dragonette, plaintiff's chiropractor, stated that

repetitive work-related injuries were the competent producing causes of plaintiff's disability.

Dr. Dragonette opined that plaintiff is "permanently partially disabled" (T. 399).  Dr.

Dragonette stated that plaintiff was able to occasionally lift/carry 10 pounds, stand and/or

walk about six hours in an eight-hour workday, and sit less than six hours, with limitations

for pushing, pulling, and overhead reaching (T. 395-97).

On May 18, 2001, Dr. James White performed a neurological exam.  Dr. White stated that plaintiff's exam was normal, and an MRI indicated advanced disc degeneration at L4-5 and mild degeneration at L3-4 and L5-S1 (T. 383).  Dr. White suggested an instrumented fusion at L4-5 if plaintiff was unable to live with the pain (T. 384).  He considered plaintiff to have a moderate/marked permanent partial disability (T. 386).

## IV.    Evaluation of the Evidence

The Commissioner concedes that the ALJ erred in relying on the opinion of Dr. Nepokroeff, as Dr. Nepokroeff's medical license was surrendered effective December 26, 2001.  Item 8, Exh. B.  Additionally, the Commissioner concedes that reliance by the ALJ on the testimony of the vocational expert and the State review physicians' opinions, both based on Dr. Nepokroeff's findings, is also improper.  Accordingly, the Commissioner argues that "the record in this case is incomplete and must be reviewed and reevaluated based on the remaining evidence."  Item 11, at 3-4.

The Commissioner argues that further proceedings are appropriate because, even in the absence of the tainted evidence, the record does not compel a finding of disability. She contends that the record supports the ALJ's finding that plaintiff is able to perform some work.  Item 11, p. 7.  The Commissioner cites to the medical evidence which indicates that plaintiff's diabetes is under control, that his anxiety is not severe, and his chest pain is musculoskeletal in nature.  However, the source of plaintiff's claimed disability is back pain and shoulder impingement.  The medical evidence related to plaintiff's back and shoulder pain, other than the tainted evidence, is found in the evaluation of Dr. Dragonette, plaintiff's chiropractor, and the reports of Drs. Czyrny and White.  Dr. Czyrny

reported right shoulder impingement and pain and limitation in plaintiff's lower back (T. 199).   Dr. White reported disc degeneration and a mild/moderate permanent partial disability (T. 386).   Dr. Dragonette conducted an evaluation of plaintiff's ability to do work-related activities.   He  concluded that plaintiff could lift no more than 10 pounds and suffers from a permanent partial disability (T. 395-99).   Only Dr. Gosy, who examined plaintiff's left elbow after a work-related injury, found him able to return to work as a heavy equipment operator (T. 305-08).   Dr. Gosy did not address plaintiff's back problems, and his opinion does not constitute substantial evidence that plaintiff is able to perform light work.[3]

In the absence of the tainted evidence, there is a lack of substantial evidence that plaintiff is able to perform light work.   Based on the reports of Drs. Czyrny and White and the evaluation of Dr. Dragonette, the record supports the finding that plaintiff is only able to perform sedentary work.   While Dr. Dragonette is a chiropractor, not a licensed physician, his opinion may nonetheless be considered in determining the severity of plaintiff's impairment and his ability to work.   *See* 20 C.F.R. § 404.1513(d)(1).   As of August 3, 2000, plaintiff was 50 years old and, for purposes of the regulations, is an individual approaching advanced age.   20 C.F.R. Part 404, Subpart P, Appendix 2, 201.00(g).   He has a high school education, with some college courses (T. 40-42).   Plaintiff's previous work as a truck driver for the City of Buffalo was semi-skilled (T. 87), and the ALJ found that he had no transferable skills (T. 25).   Accordingly, the Grids (Rule 201.14) dictate a finding of disability.

---

[3]  Light work requires occasional lifting of up to 20 pounds.  20 C.F.R. § 404.1567(b).

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the cause for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004) (quoting 42 U.S.C. § 405(g)).   Remand for further development of the record is appropriate "where the administrative record contains gaps," *id.*, or where "the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir.1999) (quotation omitted).   By contrast, where the court has "no apparent basis to conclude that a more complete record might support the Commissioner's decision," it is appropriate "simply to remand for a calculation of benefits." *Id*. at 83.   Here, the medical record is complete and indicates that plaintiff can do only sedentary work.   The conclusion that plaintiff is able to perform light work is not supported by substantial evidence, and thus the Commissioner did not meet her burden at the fifth step of the evaluation process.   Further development of the record will provide no support for the Commissioner's conclusion that plaintiff is able to perform light work.   Accordingly, a remand for the sole purpose of calculating an award of benefits is mandated.   *See Balsamo v. Chater*, 142 F.3d 75, 82 (2d Cir.1998).

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Item 6) is denied, and plaintiff's cross-motion (Item 8) is granted in accordance with sentence four of § 402(g).   The Clerk is directed to remand this matter to the Commissioner for the calculation of benefits.

So ordered.

\s\ John T. Curtin

JOHN T.  CURTIN
United States District Judge

Dated: April    28    , 2005
p:\opinions\03-610.april1205